J-S43020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERTO LABOY | : | |
| | : | |
| Appellant | : | No. 548 MDA 2023 |

Appeal from the PCRA Order Entered March 10, 2023
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000979-2006

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.*

MEMORANDUM BY KING, J.:            **FILED MARCH 28, 2024**

Appellant, Roberto Laboy, appeals from the order entered in the Lebanon County Court of Common Pleas, which denied as untimely his second petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

This Court has previously set forth the relevant facts and procedural history of this case as follows:

> On May 10, 2011, a jury found Appellant guilty of second-degree murder and related offenses. On July 27, 2011, the trial court sentenced him to a mandatory term of life imprisonment without the possibility of parole, and to a concurrent term of 10-20 years' incarceration. During Appellant's direct appeal from his judgment of sentence, this Court summarized the facts adduced at trial as follows:

---

* Retired Senior Judge assigned to the Superior Court.

> In the early morning of January 21, 2006, Tina Garcia and her friend, David Kern, left a bar in Lebanon City as it closed for the evening. Shortly thereafter, Garcia noticed that two males, wearing parkas with fur hoods, had followed her and Kern into an alley. Ultimately, the two men accosted Garcia and Kern. Garcia heard one of the men asking Kern for his money.
>
> Kern and Garcia informed the men that they did not have any money and continued walking down the alley. The men pursued Garcia and Kern, and caught up to them near a garage. Kern told Garcia to get help as there was "gonna be a problem." As she ran to knock on nearby doors, Garcia watched as the two men viciously beat Kern. In particular, Garcia observed the taller of the males, whom she later identified as Appellant, punch Kern in the chest several times. Shortly thereafter, Kern slumped to the ground.
>
> The assailants promptly fled the scene of the attack. Garcia was able to summon the authorities, who arrived to find that Kern had died as a result of multiple stab wounds to his chest. After Garcia was shown a photo array and identified Appellant as an assailant, Appellant was arrested and charged with multiple crimes. Also charged was James Tee Hower as the second assailant.
>
> Shortly before the trial of his charges, Hower agreed to plead guilty to third[-]degree murder in exchange for his testimony at Appellant's trial.

***Commonwealth v. Laboy***, 60 A.3d 849, unpublished memorandum at 1-2 (Pa.Super. filed September 11, 2012)[, *appeal denied*, 619 Pa. 701, 63 A.3d 1245 (2013) ("***Laboy I***")].

On direct appeal, Appellant argued, *inter alia*, that the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to the defense evidence of "a potential agreement between Garcia and prosecutors to provide Garcia a benefit during

- 2 -

her sentencing on an unrelated crime in exchange for her testimony" against Appellant. [*Laboy I, supra*] at 5. This Court rejected that claim,[1] as well as the other issues raised by Appellant. This Court then affirmed his judgment of sentence, and our Supreme Court ultimately denied further review [on March 14, 2013.] *See* [*id.*] Appellant filed his first PCRA petition on May 9, 2013. Following a hearing, the PCRA court denied the petition on November 20, 2014. This Court affirmed, and our Supreme Court denied further review. *See Commonwealth v. Laboy*, 134 A.3d 104 (Pa.Super. 2015), *appeal denied*, 635 Pa. 741, 134 A.3d 55 (2016) [("*Laboy II*")].

> [1] In rejecting Appellant's *Brady* claim, this Court reasoned that Appellant failed to offer any evidence of such an agreement, despite having had "the opportunity to call other witnesses to establish the existence of such an agreement." *Id.*

[Appellant filed his second *pro se* PCRA petition] on July 2, 2018. The PCRA court conducted a hearing on November 20, 2018, at which Garcia's counsel (Andrew Morrow, Esq.) and the prosecutor (District Attorney David Arnold)[2] testified. The PCRA court subsequently denied the petition as untimely on April 24, 2019, at which time the court also issued an opinion explaining its reasoning.

> [2] District Attorney Arnold prosecuted both Appellant's murder trial and Garcia's forgery charges. He agreed to dismiss Garcia's forgery charges after Appellant was convicted.

Appellant filed a timely notice of appeal and a timely, court-ordered Pa.R.A.P. 1925(b) statement. …

*Commonwealth v. Laboy*, 230 A.3d 1134, 1136-37 (Pa.Super. 2020)

("*Laboy III*").

On appeal from the denial of his second PCRA petition, this Court *sua sponte* raised the PCRA court's failure to appoint counsel for Appellant, or

otherwise conduct a *Grazier*[1] hearing, for purposes of the PCRA hearing held on November 20, 2018. Thus, this Court vacated and remanded for further proceedings. *See Laboy III, supra*.

The PCRA court summarized the subsequent procedural history as follows:

> We conducted a *Grazier* hearing on February 8, 2021. At the conclusion of the hearing, we issued an Order appointing PCRA counsel to represent [Appellant] in this matter. By Order of March 5, 2021, we granted [Appellant] the opportunity to file an amended PCRA Petition with the aid of counsel. After being informed that [Appellant] would not be filing an amended Petition, we scheduled another evidentiary hearing. After being continued, the hearing was conducted on August 8, 2022 with [Appellant] represented by counsel.
>
> \*   \*   \*
>
> At the hearing, [Appellant] first called his trial attorney, Robert Daniels, Esquire. Daniels represented [Appellant] through his jury trial in May 2011. Daniels recalled that Garcia was a witness for the Commonwealth at the jury trial; however, he was unable to recall whether or not he knew of Garcia's pending criminal charges. Daniels explained if there had been an agreement regarding Garcia's testimony, he would have received that information from the District Attorney's office. He would have looked at Garcia's docket and would have asked her about the status of her charges on cross-examination. He acknowledged that he had not called Garcia's attorney in her criminal matters to testify at [Appellant's] jury trial and also recalled that he felt that his questioning of Garcia had been limited by the Court during the trial. On cross-examination, Daniels acknowledged Garcia's importance as she was the sole eyewitness besides

_____

[1] ***Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81 (1998) (requiring on-the-record determination of voluntariness of defendant's waiver of right to counsel during criminal proceedings).

Hower. For this reason, he would have devoted a good amount of time to prepare for her cross-examination. He was unable to think of any questions he did not ask Garcia on cross-examination at the jury trial that he believed he should have asked.

[Appellant] next called Andrew Morrow, Esquire, the attorney who was appointed to represent Garcia on her criminal charges in May of 2006 when he took the case over from Brian Deiderick, Esquire of the Public Defender's Office. Morrow recalled that he filed approximately eight six-month continuances in Garcia's case as she did not have a plea offer. Those Motions indicated that Garcia was a key witness for the Commonwealth in a homicide case. Morrow had no discussions with the District Attorney with regard to a plea offer for Garcia during that time, either formal or informal, and Morrow was not involved in any meetings between the District Attorney and Garcia in preparation for her testimony at [Appellant's] trial. After the trial in this matter was over, the District Attorney contacted Morrow in June of 2011 and indicated that the Commonwealth would dismiss Garcia's charges if she paid off the fines, costs, and restitution. That contact was the first time anyone from the District Attorney's Office had proposed any resolution of Garcia's case. After Garcia provided the funds to Morrow and those items were paid off, Morrow filed a Petition for Dismissal of Garcia's charges pursuant to Pa.R.Crim.P. 586. Morrow confirmed that he had not been subpoenaed for or called as a witness at [Appellant's] jury trial.

[Appellant] next called Robert McAteer, Esquire as a witness. McAteer was a former Assistant District Attorney and acted as co-counsel with District Attorney David Arnold at [Appellant's] jury trial. Although he had no specific recollection of interviewing Garcia prior to [Appellant's] trial, he believed that he would have met with her to prepare for her testimony. He did not know whether District Attorney Arnold had ever met with her.

McAteer explained that during his tenure in the District Attorney's Office, he would not have met with a witness who was cooperating in a case without his or her attorney being present if that witness had pending criminal charges. McAteer believed that he would have known if District

Attorney Arnold had offered Garcia a negotiated plea agreement prior to [Appellant's] trial. However, the District Attorney's Office had a policy that negotiated pleas were not offered to witnesses prior to them providing testimony. McAteer was unaware that Garcia's charges had been dismissed after [Appellant's] jury trial. On cross-examination, McAteer confirmed that he knew of his ethical obligation to disclose any agreement with Garcia to defense counsel prior to her providing testimony at [Appellant's] jury trial. He further confirmed that if any offer had been extended to Garcia by himself or District Attorney Arnold, it would have been disclosed to [Appellant's] trial counsel.

[Appellant] next called Tina Louise Via, who formerly went by the name Tina Garcia, ("Garcia") as a witness. Garcia explained that she was charged with felony forgery and misdemeanor theft in 2005 and that those charges were pending when she testified at [Appellant's] trial. Prior to the trial [and before the murder at issue in Appellant's case], she entered a guilty plea to her charges pursuant to a plea bargain that called for twenty-three months of probation, but she withdrew her guilty plea prior to sentencing. Shortly after she withdrew her guilty plea, the incident which resulted in the homicide charges against [Appellant] occurred. Morrow was appointed to take over her representation on those charges after Kern's homicide. She recalled that her case was continued multiple times, but could not remember the reason for the continuances. She did not have any agreement or understanding with the District Attorney regarding the disposition of her criminal charges prior to her testifying at [Appellant's] jury trial. She spoke with her own attorney regarding her case, but did not discuss her pending charges with the District Attorney. She did meet with members of the District Attorney's office and detectives two or three times prior to [Appellant's] jury trial only to describe what happened in the incident which led to David Kern's death. She could not recall Morrow being present at those meetings.

Garcia explained that the charges against her were dismissed after she had paid her fines, but she did not have to serve any sentence involving incarceration, house arrest, probation or parole. She was never given any indication prior to giving her testimony at [Appellant's] jury trial that

her criminal charges would be dismissed.

On cross-examination, Garcia confirmed that she had withdrawn her guilty plea several months prior to the homicide in this matter and that the withdrawal of her plea had nothing to do with this case. She was adamant that she testified truthfully at [Appellant's] jury trial and that she was not promised anything prior to that trial by the District Attorney's Office.

At the conclusion of the hearing, both parties requested that we admit the transcript of the prior PCRA hearing in order to include the testimony of District Attorney David Arnold pursuant to Pa.R.E. 804 as Arnold had unfortunately passed away in the interim. We granted that request and the transcript from the November 20, 2018 PCRA hearing was admitted into evidence.

In his testimony at the prior proceeding, District Attorney Arnold had acknowledged that he handled the prosecution of this case as well as the case involving Garcia's forgery and theft charges. He explained that he was cognizant of his duty to disclose the existence of any agreement with Garcia to [Appellant] and his attorney and denied that any deal had been promised or made with Garcia prior to [Appellant's] jury trial. He explained that the agreement for dismissal was only worked out after the trial was over.

In his post-hearing Brief, [Appellant] claims that he was unaware of any information regarding Garcia's plea agreement for twenty-three months' probation on her forgery and theft charges or that the District Attorney intended to dismiss the charges once Garcia had provided her trial testimony. He alleges that it was incumbent upon the District Attorney to inform him that they intended to dismiss Garcia's charges upon her cooperation in providing testimony and that this information was wrongfully withheld from him and his counsel. It is his contention that since these facts were unknown to him, his second PCRA Petition falls within the exceptions to the timeliness requirement of Section 9545(b)(1).

(PCRA Court Opinion, 3/10/23, at 6-12) (internal citations and footnotes

omitted).

On March 10, 2023, the PCRA court denied relief. Appellant timely filed a notice of appeal on Monday, April 10, 2023. On May 1, 2023, Appellant voluntarily filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review:

> Did the PCRA court err and/or abuse its discretion when it found Appellant's PCRA petition to be untimely.

(Appellant's Brief at 4).

Appellant argues that the Commonwealth failed to disclose its intent to dismiss the charges against Garcia following her testimony against Appellant at trial. Appellant claims that the Commonwealth's failure to disclose a potential agreement with Garcia deprived him of an opportunity to challenge her credibility during cross-examination. Appellant asserts that the Commonwealth dismissed pending charges against Garcia only one month after she testified at his trial, suggesting that the Commonwealth did so in exchange for her testimony. Appellant emphasizes that it was the prosecutor who had reached out to Garcia's counsel and proposed dismissal of the charges against her following Appellant's trial. Appellant contends that the fact that Garcia and her attorney may not have known about an intent to dismiss charges did not absolve the Commonwealth from its obligation to disclose the potential agreement to Appellant prior to trial. Appellant concludes that he satisfied the newly discovered facts exception to the PCRA

time-bar, and this Court must grant relief. We disagree.

The timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Zeigler*, 148 A.3d 849 (Pa.Super. 2016). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The statutory exceptions to the PCRA time-bar allow very limited circumstances to excuse the late filing of a petition; a petitioner must also assert the exception within the time allowed under the statute. 42 Pa.C.S.A. § 9545(b)(1) and (b)(2).

To obtain merits review of a PCRA petition filed more than one year after the judgment of sentence became final, the petitioner must allege and prove at least one of the three timeliness exceptions:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)     the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to

apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

This Court has explained:

The timeliness exception set forth in Section 9545(b)(1)(ii), also known as the "newly-discovered fact" exception, requires a petitioner to plead and prove: (1) [he] did not know the fact(s) upon which [he] based [his] petition; and (2) [he] could not have learned those fact(s) earlier by the exercise of due diligence. Due diligence demands the petitioner to take reasonable steps to protect [his] own interests. … A petitioner must explain why [he] could not have learned the new fact earlier with the exercise of due diligence.

**Commonwealth v. Shiloh**, 170 A.3d 553, 557-58 (Pa.Super. 2017) (internal citations and footnote omitted). Additionally, there is no longer a presumption in Pennsylvania applicable to *pro se* incarcerated petitioners that information of public record is not "unknown" for purposes of the Section 9545(b)(1)(i) exception. **Id.** at 559. Nevertheless, "a *pro se* incarcerated petitioner is still required to **plead and prove** the facts grounding [his] claim were unknown to [him] and [he] could not have discovered those facts sooner with the exercise of due diligence, which could require the court to evaluate [his] reasonable access to public records." **Id.** (emphasis in original).

Instantly, the PCRA court evaluated Appellant's claim as follows:

[Appellant's] judgment of sentence became final when the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal on March 14, 2013 and the ninety-day time period had elapsed for him to seek a writ of *certiorari* by the United States Supreme Court in June 2013. He had one year from that date to seek collateral relief. [Appellant's] second, *pro se* Petition was not filed until July

- 10 -

2, 2018, well over four years beyond the allowable time period. …

Because the current Petition is facially untimely, we may address [Appellant's] claims only if he is able to establish the applicability of one of the limited exceptions to the timeliness requirement. [Appellant] argues that this matter falls within the "newly discovered facts" exception of Subsection (b)(1)(ii). In order to invoke the "newly discovered facts" exception, the court must determine whether the facts were unknown to the petitioner and, if so, whether the facts could have been ascertained in a timely manner through the exercise of due diligence, including an assessment of [Appellant's] access to public records. …

\* \* \*

After a careful re-examination of the circumstances here, we believe that [Appellant] has failed to establish that his claims fall within the "newly discovered facts" exception of Section 9545(b)(1)(ii). …

\* \* \*

We remain convinced that [Appellant] was aware of the facts surrounding Garcia's pending criminal charges and that he could have learned that her charges were dismissed prior to the expiration of the one-year period after his judgment of sentence became final had he attempted to do so.

\* \* \*

[T]he issue of a possible agreement between the Commonwealth and Garcia was identified at the jury trial and raised in [Appellant's] Post-Sentence Motion and appeal. [Appellant] was represented by counsel on his Post-Sentence Motion, his appeal, and his first PCRA Petition. Since his suspicions had already been aroused, he should have requested counsel to conduct further investigation of the outcome of Garcia's criminal case within one year of the time his judgment of sentence became final.

\* \* \*

> In our Opinion of April 24, 2019, we explained that we found [Appellant's] present PCRA Petition to be untimely. The transcript of the jury trial reveals that trial counsel was well aware of Garcia's pending charges and that he spent considerable time and effort during her cross-examination questioning her about those charges and any potential plea offer related to her testimony in the action against [Appellant]. We pointed out that information regarding the dismissal of Garcia's charges was available at the time of [Appellant's] Post Sentence Motion, his direct appeal, and his first PCRA Petition and that [Appellant] was represented by counsel throughout all of those proceedings. Since the resolution of Garcia's criminal matter was a major issue in her cross-examination about which she was questioned at length, [Appellant] had reason to follow up with his counsel on the outcome of her charges. He obviously failed to do so and has failed to explain why no attempt to obtain this information was made in a timely manner. Based on these facts, we believe [Appellant] could have learned of the dismissal of Garcia's charges in a timely manner through the exercise of due diligence. Thus, we confirm that [Appellant's] Petition is untimely and must be dismissed as we are without jurisdiction to rule on his claims.

(PCRA Court Opinion at 15-20) (internal citations and footnote omitted).

We agree with the court's jurisdictional analysis. At the outset, we note that Appellant does not specify **when** he learned of the alleged new fact at issue, namely the dismissal of Garcia's charges, which occurred on June 30, 2011. This defect is critical because we cannot determine if Appellant filed his petition within the requisite timeframe for asserting an exception to the time-bar. **See** 42 Pa.C.S.A. § 9545(b)(2).[2] Further, as the PCRA court noted,

_____

[2] Appellant filed his second PCRA petition on July 2, 2018. At that time, the PCRA mandated that any petition invoking an exception to the time-bar be
*(Footnote Continued Next Page)*

Appellant makes no attempt to explain why he could not have learned about the dismissal of Garcia's charges sooner with the exercise of due diligence. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *Shiloh, supra*. Given Appellant's knowledge that Garcia had pending criminal charges at the time she testified against Appellant and defense counsel's inquiry regarding the existence of a plea deal at trial, we agree with the PCRA court that Appellant could have inquired about disposition of Garcia's charges long before he filed the current PCRA petition in July 2018. *See id.* Therefore, Appellant's current petition remains time barred. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/28/2024

---

filed within 60 days of when the claim could have been presented. *See* 42 Pa.C.S.A. § 9545(b)(2) (effective until Dec. 23, 2018). Effective December 24, 2018, while Appellant's petition was pending, this statute was amended to enlarge the time to present a claimed exception from 60 days to one year, for claims arising on December 24, 2017 or thereafter. *See* 42 Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018). Regardless of which version applies here, Appellant did not indicate when he discovered that Garcia's charges were dismissed, so we cannot confirm whether Appellant complied with this subsection of the PCRA.